**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JON RAYMOND WARE,
*Defendant-Appellant.*

No. 03-15609

D.C. Nos.
CV-98-01710-LDG
CR-95-00311-1-
LDG

OPINION

Appeal from the United States District Court
for the District of Nevada
Lloyd D. George, Senior District Judge, Presiding

Argued and Submitted
February 18, 2005—San Francisco, California

Filed August 5, 2005

Before: Sidney R. Thomas, Richard A. Paez, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

**COUNSEL**

Osvaldo E. Fumo, Las Vegas, Nevada, for the defendant-appellant.

Daniel G. Bogden, United States Attorney, and Robert A. Bork, Assistant United States Attorney, Las Vegas, Nevada, for the plaintiff-appellee.

**OPINION**

CALLAHAN, Circuit Judge:

After his conviction in district court for two counts of bank robbery, the petitioner filed a motion to vacate his sentence

under 28 U.S.C. § 2255, claiming that the government had presented insufficient evidence of the banks' federally-insured status at the time of the robberies. The district court denied the petition and the petitioner appealed. Considering the totality of the trial evidence, including the short period of time that elapsed between the robberies and the petitioner's trial, we conclude that there was sufficient evidence to support the petitioner's conviction. We therefore affirm the district court's denial of habeas relief.

## I

### A.   Factual Background

The parties do not dispute the relevant facts of the underlying conviction. In October 1995, the petitioner robbed two Las Vegas branches of First Interstate Bank. Less than five months later, on March 18, 1996, a two-day jury trial commenced in the United States District Court for the District of Nevada. The government elicited the following testimony from a bank teller who was working at the first bank branch at the time of its robbery:

> Q:   Okay. Now on October the 17th, 1995, where were you working?
>
> A:   First Interstate Bank.
>
> Q:   Were you — and was that located at 4595 West Charleston Avenue, Las Vegas, Nevada?
>
> A:   Yes, it was.
>
> Q:   And is that particular bank in the state and federal jurisdiction of Nevada?
>
> A:   Yes, it is.

Q:   And is it insured by the Federal Deposit Insurance Corporation?

A:   Yes, it is.

Q:   And how do you know that?

A:   The signs are posted but it's also — all banks are federally insured.

The government also elicited the following testimony from a teller who was working at the second bank branch at the time of its robbery:

Q:   All right. Directing your attention . . . to October the 30th, 1995, on that date, were you working at the First Interstate Bank at 2100 West Charleston Boulevard, Las Vegas, Nevada?

A:   Yes.

Q:   And that bank in that area where that is, that's in the state and federal district of Nevada, is that correct?

A:   Yes.

Q:   All right. Now, . . . is the — your bank . . . insured by the Federal Deposit Insurance Corporation?

A:   Yes.

Q:   How do you know that?

A:   It's listed in the bank. It's posted.

## B. Procedural Background

On March 19, 1996, the jury returned its verdict, finding the petitioner guilty on both counts of bank robbery, in violation of 18 U.S.C. § 2113(a). That finding necessarily means that the jury found the bank insured by the Federal Deposit Insurance Corporation ("FDIC") on the dates of the robberies.

On July 11, 1996, the district court sentenced the petitioner to a prison term followed by a period of supervised release, and ordered him to pay $7,390 in restitution to First Interstate Bank.

On July 17, 1996, the petitioner filed his notice of appeal. In that appeal, he argued that the district court violated his Sixth Amendment right to confront a key government witness. Finding "no Confrontation Clause violation," a different panel of this court affirmed the petitioner's conviction in an unpublished disposition. On January 26, 1998, the Supreme Court denied his petition for a writ of certiorari. *Ware v. United States*, 522 U.S. 1097 (1998).

In early December 1998, the petitioner filed a motion to vacate his sentence under 28 U.S.C. § 2255, arguing for the first time that the government failed to establish at trial the element of the offense that the bank deposits were insured by FDIC at the time of the robberies. The petitioner specifically contended that the only evidence that the banks were federally insured came from the bank tellers' testimony offered in the present tense, indicating FDIC status at the time of trial rather than at the time of the robberies.

On March 6, 2003, the district court entered its order denying the petitioner's motion.[1] In rejecting the petitioner's argument, the district court articulated its reasoning as follows:

---

[1]The judge deciding the section 2255 motion is the same judge who presided over the petitioner's trial. *See* Rule 4(a), Rules Governing Section 2255 Proceedings for the United Stated District Courts (requiring a section 2255 motion to be forwarded to the judge who conducted the trial and imposed sentence).

> While the government failed to offer direct evidence of First Interstate Bank'[s] FDIC status at the end of October 1995, sufficient circumstantial evidence was presented to permit a jury to infer the insured status.
>
> . . .
>
> [L]ess than five months elapsed between the commission of the bank robberies at the end of October and the trial in March. In addition, the name of the bank — First Interstate Bank — suggests that the bank was a federally insured bank. Further, one teller testified that all banks are federally insured. The government also elicited testimony from both tellers that they were working at the respective branches of First Interstate on the date of the robberies. The tellers further testified that they knew the banks were federally insured because of the notice posted in the bank. Given the relatively short time between the robbery and the trial, the source of the teller's knowledge would further suggest that First Interstate Bank was federally insured in October. While the evidence, taken in isolation, might be insufficient to permit a jury to infer that First Interstate Bank was federally insured five months before the trial, on dates to which the tellers were employed, taken in combination and viewed in the light most favorable to the prosecution, the court concludes that a rational trier of fact could have found beyond a reasonable doubt that First Interstate Bank was federally insured at the time of the robberies.

On March 17, 2003, the petitioner filed a timely notice of appeal.

## II

This court reviews a district court's decision to deny a section 2255 motion de novo. *United States v. Ratigan*, 351 F.3d

957, 961 (9th Cir. 2003). We review the district court's factual findings for clear error. *United States v. Alaimalo*, 313 F.3d 1188, 1191 (9th Cir. 2002). "There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Ali*, 266 F.3d 1242, 1243 (9th Cir. 2001) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

## A.  Procedural Default

**[1]** The government would have us conclude that the petitioner is procedurally barred from challenging the sufficiency of the trial evidence because he failed to raise the issue on direct appeal. While it may be true that, under normal circumstances, a habeas petitioner's failure to raise his claim on direct appeal would subject the claim to procedural default, *Ratigan*, 351 F.3d at 962-64, that is not the case here. It is undisputed that the government failed to assert procedural default in the district court's section 2255 proceedings. Thus, absent any extraordinary circumstances which suggest that justice would be better served by overlooking the government's omission, the government has waived its procedural-default defense. *United States v. Barron*, 172 F.3d 1153, 1156-57 (9th Cir. 1999); *Gonzalez v. United States*, 33 F.3d 1047, 1049 (9th Cir. 1994). Accordingly, we proceed to address the petitioner's claim on its merits.

## B.  Sufficiency of the Evidence

The petitioner claims that the government provided insufficient evidence to establish that the two bank branches were federally insured at the time of the offenses. There is no question that both bank tellers testified in the present tense concerning the federally-insured status of their respective bank branches.[2] We resolve the petitioner's claim by considering

---

[2]The petitioner also contends that the district court erred in allowing the bank tellers' testimony on the subject of FDIC insurance because they did

the totality of the trial evidence, including the period of time that elapsed between the robberies and the trial.

**[2]** This court has held that present-tense trial testimony regarding a bank's federally-insured status may be insufficient evidence to prove that the bank was federally insured at the time of the offense. *Ali*, 266 F.3d at 1244 (holding that "[t]estimony is insufficient . . . when stated only in the present tense at trial, years after the relevant time period, because it cannot establish that the bank was insured on the date of the alleged offense"); *United States v. Allen*, 88 F.3d 765, 769 (9th Cir. 1996) (holding that present-tense testimony given in 1994 "does not establish that the credit union was insured" at the time of the crime in 1988-89). The petitioner argues that in light of *Ali* and *Allen*, the government failed to prove the federally-insured status of the bank branches, a necessary element for conviction under the bank-robbery statute, 18 U.S.C. § 2113(a), (f) (West 1996).

The present case, however, is distinguishable from *Ali* and *Allen*. *Ali* involved a bank officer's testimony that "[w]e're insured by the FDIC" more than two years after the offense. *Ali*, 266 F.3d at 1243. Timing played an important role in the *Ali* court's decision, as evidenced by its reasoning that

> neither the certificate nor [the bank officer's] testimony alone is sufficient to establish that the bank

not have personal knowledge of that fact. The petitioner failed to present this argument in his section 2255 motion. The district court, therefore, did not have an opportunity to address it, and it is not properly before this court. *See United States v. Beierle*, 77 F.3d 1199, 1201 (9th Cir. 1996) (noting that claims not presented to the district court in a section 2255 motion cannot be raised for the first time on appeal). Moreover, the petitioner's argument lacks merit. The law is clear that the uncontradicted testimony of a bank employee on the issue of FDIC insurance is sufficient to support a jury's finding of that element. *United States v. Hicks*, 217 F.3d 1038, 1045 (9th Cir. 2000); *United States v. Corbin*, 972 F.2d 271, 272 (9th Cir. 1992); *United States v. Campbell*, 616 F.2d 1151, 1153 (9th Cir. 1980).

> was federally insured at the time of the relevant offense conduct here . . . *in 1997*. The certificate of insurance *from 1985 antedated* the offense *by more than a decade*. [The bank officer's] testimony was provided solely in the present tense at trial, *well over two years after the time of the alleged offense*. Neither directly supports the inference that [the bank] was in fact federally insured *in May 1997*.

*Id*. at 1244 (emphasis added).

This same time-frame differential also distinguishes *Allen*. There, the government elicited present-tense testimony of federal insurance approximately five years after the date of the offense. *Allen*, 88 F.3d at 768-69. Similar to *Ali*, the *Allen* court emphasized,

> The problem with this testimony is that it took place during trial *in January, 1994*. [The witness] answered the prosecutor's questions in the present tense. Thus, while her testimony may establish the credit union's insurance status *in 1994*, it does not establish that the credit union was insured when Allen made his fraudulent statements *in 1988-89*.
>
> . . .
>
> [These] present-tense answers simply do not support the inference that Southern Credit Union was federally insured at the time of the offenses, *some four and a half years earlier*.

*Id*. at 769 (emphasis added).

**[3]** We read *Ali* and *Allen* as holding that the passage of a substantial period of time may prohibit the trier of fact from inferring the existence of past insurance coverage from testimony of present insurance coverage. They do not, however,

prohibit the jury from properly making such an inference where, as here, the trial is held within six months of the robberies, and the inference is supported by other circumstantial evidence.[3]

Here, the testimony at the petitioner's trial in March of 1996 occurred less than five months after the robberies in October of 1995. *Ali* and *Allen*, on the other hand, involved testimony that occurred *years* after the subject offense. Due to the principled distinction between this case, *Ali*, and *Allen*, justice does not demand that we treat these cases alike. *Cf. United States v. Battles*, 362 F.3d 1195, 1198 (9th Cir. 2004) (opining that "justice demands that we treat like cases alike" when there is "no principled distinction" between cases). Thus, we are not persuaded by the petitioner's theory that the bank tellers' present-tense testimony had no evidentiary value in proving the federally-insured status of the bank branches.

The importance of the totality of trial evidence is reflected in the language of both *Ali* and *Allen*. In *Ali*, aside from the present-tense testimony, the only evidence admitted to show that the bank was federally insured at the time of the offense was a 1985 certificate of insurance. *Ali*, 266 F.3d at 1243. As

---

[3]Other circuits agree that, absent the passage of a substantial period of time, an inference of coverage may be drawn from evidence of contemporary coverage. In *United States v. Mitchell*, the Eighth Circuit approved present-tense trial testimony of the federally-insured status of the robbed bank, where only seven months had passed from the time of the robbery. 136 F.3d 1192, 1193 (8th Cir. 1998). Similarly, in *United States v. Sliker*, the Second Circuit held that it is permissible to infer a condition was present in the past from its existence in the present because "the subsequent existence of a condition is some evidence of its prior existence, at least when the time span is not too great and there is no suggestion of an intervening circumstance that might call its previous existence into question." 751 F.2d 477, 484 (2d Cir. 1984) (Friendly, J.) (citing 2 Wigmore, Evidence § 437(1) at 513-19 (Chadbourn Rev. 1979)); *accord United States v. Miller*, 71 F. Supp. 2d 1113, 1115-16 (D. Kan. 1999) (contrasting *Allen* on the basis of a ten-month period between the trial testimony and the robbery).

we observed, "neither [the testimony nor the certificate] directly supports the inference that [the bank] was in fact federally insured in May 1997." *Id.* at 1244.

The outcome in *Ali* might have been different if the prosecution had presented some additional evidence on which the court could have relied. *Allen* makes this point clear. Although *Allen* held that present-tense testimony alone was insufficient, we found that the government proved "by a thin margin" the insurance status of a bank, where two undated documents related to the bank contained the words "Member FDIC." *Allen*, 88 F.3d at 769. In considering one of the documents, we disregarded the fact that it did "not contain a year date," stating that "one can infer from the information contained therein that the form was completed in 1989 [on the year of the offense]." *Id.* Viewing the evidence in the light most favorable to the prosecution, we "conclude[d] that a rational trier of fact could have found beyond a reasonable doubt that [the b]ank was federally insured at the time of" the subject offense. *Id.*

**[4]** In the petitioner's case, there was sufficient additional evidence to support the inference that the bank was federally insured at the time of the robberies. The bank tellers' testimony provided more information than the testimony at issue in both *Ali* and *Allen*. Present-tense testimony aside, one teller testified that all banks are federally insured. Both tellers testified that they were working at the respective branches of First Interstate Bank on the date of the robberies. The tellers further testified that they knew the banks were federally insured because of posted notices. Thus, when viewed in the light most favorable to the prosecution, this testimony allowed the jury to find beyond a reasonable doubt that First Interstate Bank was federally insured at the time of the robberies.[4] *See*

---

[4]Additionally, the government asserts that the jury could have inferred the federally-insured status of First Interstate Bank by taking notice of the fact that the only law-enforcement officers to testify about the bank rob-

*Jackson*, 443 U.S. at 319; *see also United States v. Guerrero*, 169 F.3d 933, 944-45 (5th Cir. 1999) (determining that, in light of bank official's complete testimony, jury could find beyond a reasonable doubt that bank was federally insured at time of robbery when official testified "bank is federally insured").[5]

## III

**[5]** For all of the foregoing reasons, we hold that the district court correctly denied habeas relief to the petitioner. Because the petitioner's trial was held shortly after the subject robberies, the tellers' testimony that the bank was federally insured at the time of trial, when combined with other circumstantial evidence, was sufficient to allow the jury to find that element of the crime beyond a reasonable doubt. Accordingly, the judgment of the district court is

**AFFIRMED**.

---

beries were federal agents. Both agents detailed their investigations of the petitioner and confirmed that the bank robberies fell within their federal province. Based on our determination that FDIC status was sufficiently proven by the short interval of time between the robberies and trial along with the totality of the tellers' testimony, we need not determine the extent to which the federal agents' testimony supported the inference that the bank was federally insured.

[5]Other circuits have held that the evidence was sufficient where the testimony of federally-insured status, while ostensibly only pertinent to the time of trial, was supported by some additional evidence, however scant. *E.g.*, *United States v. Harris*, 914 F.2d 927, 933-34 (7th Cir. 1990) (introduction of a 34-year-old certificate of insurance and testimony from the bank president that the premiums had been paid); *United States v. Fitzpatrick*, 581 F.2d 1221, 1223 (5th Cir. 1978) (bank comptroller's testimony that bank was insured at time of trial plus certificate indicating insurance 10 years prior to the robbery); *see also United States v. Higgans*, 507 F.2d 808, 813 (7th Cir. 1974) (bank vice president's testimony that all banks have FDIC insurance coupled with a certificate of insurance dated 16 months after the date of the robbery).